UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Christopher Witham,                                   File No. 23-cv-1563 (ECT/JFD)

        Plaintiff,

v.                                                                **OPINION AND ORDER**

The Hershey Company, *a Delaware Corporation*,

        Defendant.

---

Vincent J. Fahnlander and William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiff Christopher Witham.

Ali Michelle Kliment, Michael S. Burkhardt, and Shelby Krafka, Morgan, Lewis & Bockius LLP, Philadelphia, PA; Austine J. Spillane and Joseph G. Schmitt, Nilan Johnson Lewis PA, Minneapolis, MN, for Defendant The Hershey Company.

---

In August 2021, Defendant Hershey Company adopted a policy requiring some of its employees—including Plaintiff Christopher Witham—to be fully vaccinated against COVID-19. Witham requested a religious accommodation excusing him from complying with the policy. Hershey refused Witham's request and terminated his employment. In this case, Witham asserts religious-, disability-, age-, race-, and sex-discrimination claims, along with a claim for breach of contract.

Hershey seeks dismissal of Witham's Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted in part and denied in part. Witham alleges facts plausibly showing religious discrimination in violation of Title VII and the Minnesota Human Rights Act. Witham's remaining claims will be dismissed for various reasons. The

primary problem is that, apart from his religious beliefs, Witham does not allege facts plausibly connecting Hershey's termination decision to his protected status.

I[1]

Witham worked for Hershey "for eleven and one-half years."  Compl. [ECF No. 1] ¶ 9.  Hershey terminated Witham's employment on January 21, 2022.  *Id.* ¶ 1.  At the time of his termination, Witham's job title was "Omnichannel Integration Lead."  *Id.* ¶ 9. Witham had been promoted to this position in June 2021.  *Id.* ¶ 14.

The Complaint does not include allegations describing Witham's particular duties as Omnichannel Integration Lead.  *See generally id.*  It does allege that "Witham was not requested to travel to customer locations, to meet with other people in person, or to travel to corporate headquarters."  *Id.* ¶ 15.  It also alleges that—owing to the COVID-19 pandemic—Hershey asked Witham to work remotely from his residence.  *Id.* ¶¶ 12–13, 16. During 2020 and "most of 2021," Witham worked from his residence in Hennepin County, Minnesota.  *Id.* ¶ 13.  At some point, Witham moved from Minnesota to Polk County, Wisconsin, and worked from a residence there until Hershey terminated his employment in January 2022.  *Id.* ¶¶ 12, 16.

In August 2021, Hershey announced a COVID-19 vaccine mandate for its "Corporate department employees," *id.* ¶ 1, and Witham was in this group, *id.* ¶ 23.  Under the mandate, Witham and other employees in the mandate-covered group were required

---

[1]      In accordance with the standards governing a Rule 12(b)(6) motion, the facts are taken from Witham's Complaint, and all reasonable inferences are drawn in his favor. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).

2

"to receive one of the three vaccines available in the United States: either Johnson & Johnson, Moderna, or Pfizer vaccines." *Id.* ¶ 24. Covered employees were required "to be fully vaccinated" by October 4, 2021, *id.* ¶ 23, though Hershey allowed "employees to claim a religious exemption to forced vaccination," *id.* ¶ 25. Non-vaccinated employees who were not granted a religious or medical accommodation faced termination. *Id.* ¶¶ 24–25.

Witham requested a religious accommodation. *Id.* ¶ 27. "In his religious accommodation request, Plaintiff Witham stated he is a Roman Catholic, he takes his faith very seriously, and Catholic teaching requires him to reject the vaccine if [he] discerns through his religiously informed conscience that taking the vaccine will violate his religious faith." *Id.* ¶ 28; *see id.* Ex. 2 [ECF No. 1-2] at 1–2. Among several justifications Witham identified as support for his exemption request, Witham informed Hershey "that his religious beliefs preclude him from taking the [COVID-19] vaccine" because the vaccines available in the United States "were produced with or tested on human cells derived from direct abortions." *Id.* ¶ 33 (quotation omitted); *see id.* Ex. 2. Witham explained to Hershey that he "believes that using cells produced with or tested with cells from aborted babies would make him an accessory to the killing of unborn babies from whom the cells were taken." *Id.* ¶ 35. As an alternative to vaccination, Witham proposed "periodic testing, self-monitoring, and use of PPE." *Id.* ¶ 56.

Hershey denied Witham's request. *Id.* ¶ 44. Hershey wrote:

> We cannot provide a requested accommodation when it would create an undue hardship. One of the ways that a request can pose an undue hardship is when the proposed accommodation

> poses a health risk to the individual or others.  With respect to your specific request—to not get vaccinated and still perform or be required to perform in-person work we have concluded that there is no accommodation available that would enable you to continue to perform the essential functions of your job without imposing undue hardship or risking the business partners, other individuals working on or visiting our premises, and members of the public.  This is particularly true as your role requires you to work in close contact with other individuals.

*Id.* ¶ 57.  Hershey terminated Witham's employment "based on" Witham's refusal to take the COVID-19 vaccine.  *Id.* ¶ 1; *see id.* ¶ 105.  Hershey allowed some unvaccinated employees to continue working for the company.  *Id.* ¶ 61.

In addition to Hershey's refusal to grant his request for a religious exemption to the vaccination policy, Witham believes he was terminated based on his age, race, and sex. Witham is a white male, and he was 52 years old at time of his termination.  *Id.* ¶¶ 2, 67. During a senior leadership meeting in 2020, a Hershey corporate communications director stated that there were "too many old white guys" working at the company and that Hershey's culture was changing.  *Id.* ¶ 62.  After this meeting, Hershey "announced that [a] survey [it had conducted] included a quote that the opinions of the 'old, white guy' demographic should not be considered as the company sought to diversify its employee base."  *Id.* ¶ 64.

Witham asserts seven claims in this case: (1) a claim for religious discrimination and failure to accommodate under Title VII, 42 U.S.C. § 2000e *et seq.*, Compl. ¶¶ 92–110; (2) a claim for religious discrimination and failure to accommodate under the Minnesota Human Rights Act, Minn. Stat. § 363A.08, Compl. ¶¶ 111–22; (3) a claim for

4

discrimination and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Compl. ¶¶ 123–28; (4) a claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, Compl. ¶¶ 129–39; (5) a claim for race discrimination under Title VII, Compl. ¶¶ 140–49; (6) a claim for sex discrimination under Title VII, Compl. ¶¶ 150–59; and (7) a claim for breach of contract under unspecified common law, *id.* ¶¶ 160–66.

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* The court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

5

A

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII, a plaintiff eventually must show that he "(1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action."  *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007) (citing *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam)).[2] Once a plaintiff makes out a prima facie case, the burden shifts to the employer to prove accommodating the employee's religious beliefs would cause an "undue hardship."

---

[2]     The plaintiff need not plead facts establishing a prima facie case to survive a Rule 12(b)(6) motion in a Title VII case,  because the prima facie case is an evidentiary standard, not a pleading requirement.  *Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit.  Instead, such elements are part of the background against which a plausibility determination should be made."  *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal citations and quotations omitted).  The elements may be used as a "prism to shed light on the plausibility of the claim."  *Id.* (quotation omitted).

*Seaworth*, 203 F.3d at 1057.  To demonstrate "undue hardship," the employer must establish that the "burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

Witham alleges facts plausibly showing a prima facie case.  (1) The Complaint includes numerous allegations describing Witham's Catholic faith and his objections to the COVID-19 vaccines and Hershey's COVID-19 vaccination policy.  The Complaint alleges a connection between Witham's faith and his objections grounded in, among other things, Witham's objection that the vaccines available in the United States "were produced with or tested on human cells derived from direct abortions."  Compl. ¶ 33 (quotation omitted); *see also id.* ¶ 35 (alleging Witham's belief "that using cells produced with or tested with cells from aborted babies would make him an accessory to the killing of unborn babies from whom the cells were taken"); *see Brandon v. Bd. of Educ. of City of St. Louis*, No. 4:22-cv-00635-SRC, 2023 WL 4104293, at *16 (E.D. Mo. June 21, 2023) (finding it plausible that the plaintiffs' opposition to abortion amounted to "sincerely held religious beliefs that prevent[ed] them from receiving the COVID-19 vaccines").  (2) Witham alleges he informed Hershey of these objections. *Id.* ¶¶ 33–34; *see id.* Ex. 2 at 1–2. (3) And Witham alleges Hershey terminated his employment for refusing to comply with Hershey's vaccination policy. *Id.* ¶¶ 1, 105.

Hershey argues that Witham has failed to allege a plausible Title VII religious discrimination claim, but Hershey's arguments on this point are not persuasive.  Hershey argues that Witham's objections to the COVID-19 vaccines and Hershey's vaccine policy

are not "religious."  For this argument, Hershey focuses on Witham's broader allegations regarding, for example, the sanctity of his body and the dangerousness or ineffectiveness of the COVID-19 vaccines.  *See, e.g.*, *id.* ¶¶ 30, 36–37, 40, 42, 55, 75–84.  The first answer to this argument is that it does not address Witham's abortion-specific concerns.  Those concerns are (at least) plausibly religious.  And those concerns mean the claim survives.  The second answer is that determining whether Witham's objections—or which of them— are religious is a fact-intensive question that seems generally ill-suited for resolution at the motion-to-dismiss stage.  *See Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000) (identifying considerations relevant to answering whether a belief is religious in nature, as distinct from a belief that is secular or personal).  That is not to say this question could never be appropriate for resolution on a Rule 12(b)(6) motion.  It is to say that Witham went to some length in his Complaint to tether his objections—including objections that might reasonably be construed as secular or personal—to his Catholic faith.  It is therefore plausible that, for Witham, these concerns are rooted in his faith.  That is enough for now.

Hershey argues that Witham did not inform it of the precise character of some of his religious objections.  Hershey argues, for example, that Witham did not inform it of his belief that "taking the COVID-19 vaccine makes him an accessory to the killing of unborn babies, that his 'religious beliefs' teach that the recipient of such a vaccine makes him a participant in the offensive act of abortion, and that he is faithful to these views on abortion."  Def.'s Mem. in Supp. [ECF No. 13] at 6 n.1.  This argument is not supported.  The religious-accommodation-request form Witham submitted to Hershey includes multiple references to Witham's abortion-related objections.  Compl. Ex. 2 at 1 ("There is

a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines [sic] derived from direct abortions."); *id.* at 2 ("An individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines."). In other words, Witham's request form notified Hershey of the specific nature of his objections. Hershey cites no law supporting the proposition that Witham was required to be more particular or exacting in describing his objections.

B

Like Title VII, the Minnesota Human Rights Act (or "MHRA") prohibits discriminatory employment practices on the basis of religion. Minn. Stat.§ 363A.08. For the most part, the parties agree that a religious discrimination inquiry under the MHRA is identical to that under Title VII. Def.'s Mem. in Supp. at 9; Pl.'s Mem. in Opp'n [ECF No. 20] at 23 n.7; *see Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) ("The same analysis applies to both MHRA and Title VII claims.").

There is one dispute, however. Like his Title VII claim, Witham's MHRA claim rests on the allegation that Hershey failed to accommodate Witham's religious beliefs when it refused to grant him an exemption to Hershey's vaccine policy. Compl. ¶¶ 119–21. Judges in this District recently have reached different conclusions regarding whether a failure-to-provide-religious-accommodation claim is cognizable under the MHRA. *Compare Tipcke v. Olmsted Med. Ctr.*, No. 22-cv-2470 (ADM/JFD), 2023 WL 2776098, at *3 (D. Minn. Apr. 4, 2023) ("While both Title VII and the MHRA prohibit religious discrimination in employment, only Title VII explicitly requires employers to provide

religious accommodations to employees.") (citing Stephen F. Befort, 17 *Minn. Practice., Employment Law & Practice* § 11:18 (4th ed. 2022)), *with Lee v. Seasons Hospice*, Nos. 22-cv-1593 (PJS/DJF) and 22-cv-1923 (PJS/JFD), 2023 WL 6387794, at **4–8 (D. Minn. Sept. 29, 2023) (concluding that the MHRA requires employers to reasonably accommodate employees' religious practices).  With no controlling authority, I am more persuaded by Chief Judge Schiltz's reasoning in *Lee*.  Based on *Lee*, Witham's MHRA claim survives.

C

To plead an ADA discrimination claim, "a plaintiff must plausibly allege that []he '(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability.'" *Tipcke*, 2023 WL 2776098, at *5 (quoting *Hill v. Walker*, 737 F.3d 1209, 1216) (8th Cir. 2013)).  The ADA also prohibits inquiry or examination into an employee's disability status "unless such examination or inquiry is shown to be job-related and consistent with business necessity." *Id.* (quoting 42 U.S.C. § 12112(d)(4)(A)).  "This provision applies to all employees, regardless of whether the employee has an actual disability." *Id.* (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)).  To pursue an ADA claim, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 919 (8th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)).  Though courts construe administrative charges "liberally," they "will not invent, *ex nihilo*, a claim that was not made before the relevant agency."

10

*Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021).  The Eighth Circuit requires "that '[e]ach incident of discrimination and each retaliatory adverse employment decision . . . be individually addressed before the EEOC'" to be considered sufficiently related to a properly exhausted claim.  *Id.* (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015)).

Here, Witham's ADA claim fails because (1) he never exhausted his administrative remedies, (2) Hershey's vaccination policy is not an inquiry or examination into Witham's disability status, and (3) Witham fails to allege he had a disability for Hershey to accommodate.  Consider each of these in turn.

(1) "[A]n EEOC charge is a part of the public record and may be considered on a motion to dismiss."  *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).  When Witham filed charges of religious discrimination with the EEOC in February 2021, and later when he added age, race, and sex discrimination charges in July 2021, he did not check the EEOC form's "Disability" discrimination box; nor did his comments or supporting documents describe any disability-related discrimination.  *See* ECF Nos. 13-3– 13-4.  Though courts construe EEOC charges liberally, Witham cannot show that an "incident" of disability discrimination "was addressed before the EEOC," as required.  *Weatherly*, 994 F.3d at 944.  He therefore failed to exhaust administrative remedies as to the ADA claim.

(2) Had it been properly exhausted, Witham's ADA claim would fail regardless. The core of Witham's ADA claim is that Hershey's vaccine mandate violated § 12112(d)(4)(A) of the ADA by requiring a medical examination or inquiring into an

employee's disability status.  Compl. ¶¶ 126–27; Pl.'s Mem. in Opp'n at 40–41.  Witham contends that "Defendant's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a) [sic], by initially requiring testing, vaccination, and then by simply terminating the Plaintiff." Compl. ¶ 127.  Witham failed to plead that Hershey ever required COVID-19 testing.  And Hershey's vaccination requirement is not an inquiry "as to whether [a subject] employee is an individual with a disability or as to the nature or severity of the disability," within the meaning of § 12112(d)(4)(A).  *Lee*, 2023 WL 6387794, at *9; *see also Tipcke*, 2023 WL 2776098, at *6.

(3) "For an ADA failure-to-accommodate disability-discrimination claim, a plaintiff must establish both a prima facie case of discrimination based on disability and a failure to accommodate it."  *Powley v. Rail Crew Xpress, LLC*, 25 F.4th 610, 612 (8th Cir. 2022) (quotations omitted).  A prima facie case of discrimination based on a disability requires showing that the plaintiff has a disability within the meaning of the ADA.  *Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, No. 22-cv-1319 (JRT/ECW), 2023 WL 5000255, at *12 (D. Minn. Aug. 4, 2023).  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual," as well as the record of such impairment or that the plaintiff was regarded as having the impairment.  42 U.S.C. § 12102(1).  Witham does not allege he was disabled within the meaning of the ADA.  *See generally* Compl.  He does not allege that he had any physical or mental impairment that limited him, or that he was regarded as having such an impairment.  *Id.*  In fact, Witham appears to concede he did not have a disability when he points out that an employee "need not actually be disabled" to assert violations of the ADA's prohibition on

12

medical inquiries or examinations.  Pl.'s Mem. in Opp'n at 40.  Instead, Witham claims Hershey discriminated "between the vaccinated and unvaccinated."  Compl. ¶ 127.  Being unvaccinated is not a disability within the meaning of the ADA, *see Kiel*, 2023 WL 5000255, at *12, and therefore Hershey had no duty to accommodate Witham's "disability."

D

Consider Witham's age-, race-, and sex-discrimination claims together.  The Age Discrimination in Employment Act (or "ADEA") makes it unlawful for employers to discriminate against an individual over 40 years of age "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a).  Similarly, under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Witham claims to have alleged direct evidence of discrimination.  Direct evidence is "evidence of conduct or statements by persons involved in the decisionmaking process that is sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision."  *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999).  Direct evidence is that which shows "'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action."  *Griffith v. City of Des Moines*, 387 F.3d 733,

736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)).   "[S]tray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process" are not direct evidence. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quotations omitted).

Witham does not plausibly allege the presence of direct evidence.  Witham relies on a statement allegedly uttered by an unnamed communications director—that there were "too many old white guys" at Hershey—as his direct evidence of age, race, and sex discrimination.  Compl. ¶¶ 63, 136, 144, 154.  Witham does not allege the statement was made about him, in his presence, or was in any way related to his termination.  In fact, the statement is alleged to have been made in 2020, up to two years before Witham was terminated from Hershey.  This is not direct evidence that Hershey terminated Witham because he was over 40 years old, white, or male.

Again, "[a]t the pleading phase, a plaintiff need not plead facts establishing a prima facie case for their Title VII claim." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021).  "However, the elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit." *Id.* (quotation and alterations omitted).  "The elements are 'part of the background against which a plausibility determination should be made.'" *Id.* (quoting *Blomker*, 831 F.3d at 1056).  At step one of *McDonnell Douglas*, Witham must make a prima facie showing of age, race, or sex discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If Witham establishes a prima facie case, "the burden of production shifts to [Hershey] to articulate a non-discriminatory, legitimate justification for its conduct, which rebuts [his] prima facie

case." *Doucette v. Morrison Cnty.*, 763 F.3d 978, 982 (8th Cir. 2014) (quotation omitted). If Hershey meets its burden at the second step, Witham must "produce evidence sufficient to create a genuine issue of material fact regarding whether [Hershey's] proffered nondiscriminatory reason is a pretext for discrimination." *Id.* (quotation omitted).

Witham's claims fail because the Complaint includes no allegations plausibly connecting his protected status to Hershey's termination decision. He does not, in other words, plausibly allege that the circumstances of his termination give rise to an inference of age, race, or sex discrimination. To show he suffered age-, race-, and sex-discrimination, Witham relies on: (1) the unnamed communications director's 2020 comment regarding the presence of "too many old white guys," Compl. ¶¶ 144, 154; (2) that a Hershey survey included a quote that the opinions of the "old, white guy" demographic should not be considered, *id.* ¶ 64; and (3) that Hershey replaced Witham with an employee "who was significantly younger, a different race and/or female to meet [its] DEI goals and quotas," *id.* ¶ 66. Witham adds that if he had been "of a minority race" or a woman, he would not have been terminated. *Id.* ¶¶ 148, 156.

Witham's assertions that Hershey terminated him due to his age, race, and sex (*see, e.g.*, *id.* ¶¶ 2, 67, 90, 134, 147, 155) are bare legal conclusions that are not binding here. *Warmington*, 998 F.3d at 797 (citing *Ashcroft*, 556 U.S. at 678). The same is true with respect to Witham's allegation that Hershey "replaced [him] with an employee who was significantly younger, [of] a different race, and/or female so as to meet [Hershey's] DEI goals and quotas." Compl. ¶ 66. As the Eighth Circuit has previously explained:

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . ., rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests.

*Blomker*, 831 F.3d at 1056 (quotation omitted)

Further, Hershey argues persuasively that Witham's allegations regarding the "old white guys" comments show at most "stray remarks" analogous to those in *Norgren v. Minn. Dep't of Hum. Servs.*, No. 22-cv-489 (ADM/TNL), 2023 WL 35903, at *6 (D. Minn. Jan. 4, 2023). In *Norgren*, a night-shift supervisor made one comment about gender to Norgren, who later claimed Title VII discrimination. *Id.* The court found the comment did not give rise to a plausible inference of discrimination "because the statement was a solitary stray remark made two years before Norgren ended his employment." *Id.* Here, the Hershey communications director's apparent one-time comment about "old white guys" was made about two years prior to Witham's termination and is not alleged to have been made to or in the presence of Witham. The survey comment is devoid of context, alleged to have been made about two years before Witham's termination, and there are no factual assertions linking the comment to Witham. Witham's factual allegations simply do not give rise to any plausible inference that he was treated differently based on his age, race, or sex.

E

In the absence of an agreement stating otherwise, "Minnesota law presumes that employment for an indefinite term is at will." *Gunderson v. All. of Comput. Pros., Inc.*,

628 N.W.2d 173, 181 (Minn. App. 2001) (citations omitted).  However, employer policy statements, such as provisions in an employee handbook, may create a binding unilateral contract between the employer and the employee.  *Hall v. City of Plainview*, 954 N.W.2d 254, 261 (Minn. 2021) (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983)).  Under Minnesota law, formation of a unilateral contract requires "(1) an offer definite in form, (2) communication of the offer, (3) acceptance and (4) consideration."  *Neb. Beef, Ltd. v. Wells Fargo Bus. Credit, Inc.*, 470 F.3d 1249, 1251 (8th Cir. 2006) (citing *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 742 (Minn. 2000)).  "An offer must contain sufficiently definite terms to enable the fact-finder to interpret and apply them."  *Id.*  Whether an offer is sufficiently definite to constitute a unilateral contract is an objective consideration "determined by the outward manifestations of the parties."  *Pine River State Bank*, 333 N.W.2d at 626.  General statements of policy "are no more than that and do not meet the contractual requirements of an offer."  *Id.*  Further, a contract must be supported by consideration to be binding.  *James v. W. Nat'l Mut. Ins. Co.*, No. 99-cv-1566 (RHK/JMM), 2001 WL 436121, at *11 (D. Minn. Mar. 9, 2001).  "A promise to do something that one is already legally obligated to do does not constitute consideration."  *Id.* (quoting *Deli v. Hasselmo*, 542 N.W.2d 649, 656 (Minn. Ct. App. 1996)).

Here, Witham claims that "Hershey pledged to 'not make any employment related decisions based upon a person's race, color, gender, national origin, age, religion, citizenship status, disability, medical condition, sexual orientation, gender identity, veteran status, marital status, or any other basis protected by law.'"  Compl. ¶¶ 85, 161.  But the

Complaint alleges no facts plausibly showing that Hershey's antidiscrimination pledge is anything more than a general policy statement.  Witham does not, for example, provide a source for the quoted language; it is unclear whether the pledge is contained in an employee handbook, a policy statement, or something else.  At most, the Complaint alleges facts showing the presence of a policy statement.  If the alleged antidiscrimination pledge were definite enough to constitute an offer, the alleged contract still fails the fourth prong of a unilateral contract—consideration.  It is axiomatic that a promise to do something one is already legally obligated to do is not valid consideration. *James*, 2001 WL 436121, at *11. Hershey is already legally bound by Title VII, the ADA, and the ADEA not to discriminate against employees based on religion, age, race, and sex; its promise not to discriminate based on legally protected classes cannot constitute valid consideration.

## ORDER

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     Defendant The Hershey Company's Motion to Dismiss [ECF No. 11] is **GRANTED in part** and **DENIED in part**.

2.     Counts III through VII of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

3.     The Motion is in all other respects **DENIED**.

Dated: December 15, 2023                      s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court