UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Witham, | Case No. 23-CV-1563 (LMP/JFD) |
| Plaintiff, | |
| v. | ORDER |
| The Hershey Company, | |
| Defendant. | |

This lawsuit involves Plaintiff Christopher Witham's discrimination claims against his former employer, The Hershey Company ("Hershey"), resulting from the company's termination of his employment after it denied his request for a religious exemption from its COVID-19 vaccine mandate. Before the Court are the parties' cross-motions to compel discovery (Dkt. Nos. 78, 86.) The Court held a hearing on these motions on January 23, 2025, and now grants the motions in part and denies them in part.

## BACKGROUND

### I.  Factual Background

Mr. Witham worked for Hershey for over 11 years before his termination in January 2022. (Order on Def.'s Motion to Dismiss 2, Dkt. No. 24.) At the time of his dismissal, Mr. Witham held the position of Omnichannel Integration Lead, a role to which he had been promoted in June 2021. (*Id.*) When the COVID-19 pandemic began, Hershey instructed many of its employees, including Mr. Witham, to work remotely from home. (*Id.*) In 2020 and for most of 2021, Mr. Witham worked from his residence in Hennepin

County, Minnesota, but later moved to Polk County, Wisconsin, where he continued to work until his termination. (*Id.*)

In August 2021, Hershey implemented a COVID-19 vaccination mandate for employees in its Corporate Department, which included Mr. Witham. (*Id.*) The mandate required the employees to receive one of the three vaccines available in the United States, those manufactured by Johnson & Johnson, Moderna, or Pfizer. (*Id.* at 2–3.) These employees were expected to be fully vaccinated by October 4, 2021, unless they were granted a religious or medical exemption. (*Id.* at 3.) Non-vaccinated employees without religious or medical exemptions were subject to termination. (*Id.*)

Mr. Witham sought a religious exemption from the vaccination mandate in September 2021. (*Id.*) Under the section that required him to "describe the religious belief or practice that necessitates this request for accommodation," Mr. Witham stated as follows:

> I am a Roman Catholic Christian, and the Roman Catholic Church teaches that a person may be required to refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment. While the Catholic Church does not prohibit the use of any vaccine, and generally encourages the use of safe and effective vaccines as a way of safeguarding personal and public health, the following authoritative Church teachings demonstrate the principled religious basis on which a Catholic may determine that he or she ought to refuse certain vaccines:
> - Vaccination is not morally obligatory in principle and so must be voluntary.
> - There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell[] lines derived from direct abortions. It is permissible to use such vaccines

2

- only under certain case-specific conditions, based on a judgment of conscience.
- A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Catholic moral teachings.
- A person is morally required to obey his or her sure conscience, even if it errs.

(Ex. 2 of Compl. 1, Dkt. No. 1-2 (footnotes omitted).) As an alternative to vaccination, Mr. Witham proposed measures such as periodic testing, self-monitoring, and using personal protective equipment. (Order on Def.'s Motion to Dismiss 3, Dkt. No. 24.)

Hershey denied Mr. Witham's request for an exemption. (*Id.*) In its response, Hershey explained:

> We cannot provide a requested accommodation when it would create an undue hardship. One of the ways that a request can pose an undue hardship is when the proposed accommodation poses a health risk to the individual or others. With respect to your specific request—to not get vaccinated and still perform or be required to perform in-person work—we have concluded that there is no accommodation available that would enable you to continue to perform the essential functions of your job without imposing undue hardship or risking the business partners, other individuals working on or visiting our premises, and members of the public. This is particularly true as your role requires you to work in close contact with other individuals.

(*Id.* at 3–4.) Mr. Witham's employment was terminated in January 2022 due to his refusal to comply with the vaccine mandate. (*Id.*)

II. **Procedural Background**

Subsequently, Mr. Witham filed this lawsuit alleging that Hershey's refusal to accommodate his religious beliefs constituted religious discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Minnesota Human Rights Act, Minn. Stat. § 363A.08. (*See generally* Compl., Dkt. No. 1.) His complaint also raised

3

additional claims, including discrimination based on his age, race, and sex. (*Id*.) On December 15, 2023, the District Judge then presiding over this case, The Honorable Eric C. Tostrud,[1] granted Hershey's Motion to Dismiss all claims in this case except Mr. Witham's religious discrimination claims. (Order on Def.'s Motion to Dismiss 18, Dkt. No. 24.)

Since Judge Tostrud issued his order dismissing many of Mr. Witham's claims, this Court heard and ruled on a previous round of cross motions to compel between the parties. On Hershey's Motion to Compel Responses to Requests for Production, this Court held on September 5, 2024 that documents in response to Hershey's Requests for Production ("RFPs") Nos. 9, 13, 18 through 23, 26, 31, 32, 46 through 48, and 60 were both relevant and proportional to the needs of the case, and ordered Mr. Witham to produce all responsive electronic communications, as set out in those RFPs. (Sept. 5, 2024 Order 13, Dkt. No. 67.) As to Mr. Witham's Motion to Compel Hershey to produce the requests for accommodation from comparator employees, the Court held that those documents were relevant but that production of all of the comparator files (consisting of over 100 requests) would be disproportionate. (*Id*. at 16.) The Court ordered Hershey to produce 25 of the requests in redacted form, saying that "Mr. Witham is free to move to compel further responses or production if he believes additional justifications are revealed upon his review of the discovery." (*Id*.) In that order, the Court also granted Mr. Witham's general request

---

[1] Upon the appointment of The Honorable Judge Laura M. Provinzino, this case was reassigned to her. (*See* Clerk's Notice of Reassignment, Dkt. No. 73.)

for discovery into the costs of accommodating his religious beliefs, including both potential and actual costs. (*Id.* at 17.)

The parties have continued to produce relevant materials and now bring cross-motions to compel discovery. In its motion, Hershey seeks 1) certain communications previously ordered by the Court to be produced, which it says Mr. Witham has failed to adequately produce; and 2) Mr. Witham's financial information to support his claim for damages and any efforts he made to mitigate such damages. (Def.'s Mot. to Compel, Dkt. No. 78.) Mr. Witham's motion seeks: 1) additional discovery on similar requests for accommodation beyond what the Court previously ordered to be produced; 2) depositions of certain Hershey personnel; 3) information regarding Hershey's criteria for determining the consistency and sincerity of an employee's religious beliefs; and 4) information regarding the undue hardship Hershey alleges substantiates their decision to deny Mr. Witham's request for accommodation. (Pl.'s Mot. to Compel, Dkt. No. 86.)

### III.  **Legal Standards**

Federal Rule of Civil Procedure 26 allows parties in litigation to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts consider numerous factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

If a party believes that an opposing party has failed to respond to discovery, or has served insufficient responses, it may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). A court may compel responses if a party fails to answer an interrogatory propounded under Rule 33 or to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of such a motion, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

A proper discovery response must either answer the request fully or state with specificity the grounds for objecting to the request. *See* Fed. R. Civ. P. 33(b), 34(b)(2). Objections must be stated with specificity and in relation to specific requests; any ground "not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012). The party seeking discovery bears the initial responsibility for making a threshold showing of relevancy before the production of information is required. *See, e.g.*, *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

## DISCUSSION

The Court will address the substantive arguments of each party's motion in turn, but as stated on the record in the hearing, to the extent each motion seeks sanctions against a party for discovery misconduct, the motions are denied. (Jan. 23, 2025 Hr'g. Tr. 53:12–15, Dkt. No. 111.)

**I.     Hershey's Motion to Compel (Dkt. No. 78)**

  **A. Previously Ordered Communications**

In its Motion to Compel and accompanying Memorandum, Hershey alleges that Mr. Witham and his counsel have not adequately complied with the Court's September 2024 Order compelling Mr. Witham to produce certain communications relevant to this case. (*See* Def.'s Mem. in Supp. 10, Dkt. No. 80.) In response to this perceived failure to comply, Hershey requests that the Court order Mr. Witham to hire a discovery vendor with the technical capability to extract files responsive to the ordered discovery from his personal devices because the processes he has used to this point have not yielded the information required by the Court's previous discovery order. (*Id.*)

In September, the Court ordered that Mr. Witham produce all communications responsive to Hershey RFPs Nos. 9, 13, 18 through 23, 26, 31, 32, 46 through 48, and 60. (Sept. 5, 2024 Order 13, Dkt. No. 67.) Hershey states that Mr. Witham's production in accord with this order "at best, … reflects a manual collection of incomplete screenshots of messages identified through limited and unexplained search criteria, many of which are duplicative, that do not include important metadata and substantive content." (Def.'s Mem. in Supp. 10, Dkt. No. 80.) In addition, Hershey claims that Mr. Witham's email production was "almost entirely comprised of hundreds of automated blog subscription emails from the same source (over 6,700 pages) or emails Plaintiff sent between his personal email account and Hershey email account ***that Plaintiff did not collect and produce himself, but instead took from Hershey's production and simply reproduced back to Hershey***." (*Id.* at 11 (emphasis in original).) This evidence makes Hershey suspect that a thorough search has not been completed of Mr. Witham's communications and that more responsive material exists that has not been produced. In summary, Hershey claims that Mr. Witham's

7

responses to the ordered discovery are both qualitatively and quantitatively insufficient to be considered compliant with the September 2024 order.

1. Hershey's Qualitative Concerns Regarding Mr. Witham's Production

Hershey's qualitative concerns regarding Mr. Witham's production of documents in response to the RFPs at issue largely concern the format in which relevant text messages were produced, particularly their lack of accompanying metadata. Mr. Witham argues that "Neither the Defendant's Requests nor the Order specified Plaintiff produce the 'metadata.' This Court's Order did not require the other detail Defendant seeks in this Motion to Compel, either," including "'sender,' 'context,' and 'metadata.'" (Pl.'s Mem. in Opp. 10, Dkt No. 98.) This position is an inaccurate characterization of both the Court's order and Hershey's RFPs. It is true that the word "metadata" does not appear in the Court's order, but that is because doing so is unnecessary, as the order commands Mr. Witham to provide adequate responses to the RFPs in question and those RFPs require metadata to be produced.

Hershey's RFPs include a set of instructions that discuss the manner in which Mr. Witham is to respond to the RFPs. They include the following requests:

> 1. In responding to these Requests, produce all documents that are available to you …
> …
> 3. Each Document is to be produced (together with all drafts thereof) in its entirety, without redaction or expurgation of any kind or nature whatsoever
> …
> 7. Manner of Production. … Please produce ESI [Electronically Stored Information] as single-page TIFF images, accompanied by load files for *internal and external metadata* in Concordance .dat file format, and for images in IPRO .lpt format, extracted or OCR'ed text in .txt files, and as specified, native files.

(Def.'s First Set of RFPs 1–2, Dkt No. 47-1 (emphasis added).) The RFP's definitions section defines "Document" as including "originals, copies, or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, *e.g., metadata*, regardless of origin or location" and "ESI" as including "native file formats without alteration or deletion of any associated information, *like metadata*." (*Id*. at 5 (emphasis added).) Mr. Witham did not object to the inclusion of "metadata" in Hershey's definitions.

Reviewing the text messages produced by Mr. Witham, his production is substantially non-compliant with the instructions and definitions in the RFPs. The Court concurs with Hershey when it points out that it appears that Mr. Witham developed search terms on his own, entered them into his text messaging application, and took screenshots of the messages he thought were responsive. This is a hopelessly inadequate way to search for and produce documents responsive to an RFP in federal court. Mr. Witham himself is not an attorney and has no way of knowing that, but his counsel have a responsibility to ensure that what is produced in discovery is both actually responsive to Hershey's request and compliant with the Court's orders.

2. Hershey's Quantitative Concerns Regarding Mr. Witham's Production

The processes (or lack thereof) which Mr. Witham used to identify responsive documents were wholly insufficient and have caused Hershey to suspect that Mr. Witham has not produced all responsive documents in his possession. This concern is compounded by the fact that, of the documents produced, a large proportion of them are either non-responsive or are re-numbered productions of documents already produced by Hershey.

9

(Def.'s Mem. in Supp. 11, Dkt. No. 80.) These "reproduced" documents are not simply documents that both parties had in their possession, but documents that Hershey had in its possession and produced, with Hershey-specific Bates numbers, which Mr. Witham then renumbered and sent straight back to Hershey. (*Id*. at 11–12.) It is difficult to see how an attorney could think that such a practice complied with an order requiring responses to RFPs. Putting that aside, the Court shares Hershey's concerns that additional responsive material may exist and would have been discovered and produced, had Mr. Witham and his attorneys used an accepted and appropriate method of searching his devices for responsive documents.

When this Court orders that discovery be produced by granting a motion to compel, parties must comply with that order. Here, Mr. Witham was required to produce the information in the format Hershey requested in its unobjected-to written request. Mr. Witham did not do that. Mr. Witham will produce all text messages and email communications responsive to the RFPs at issue, including the metadata and other accompanying information required by the RFPs in the "Instructions" and "Definitions" sections. While the Court will not order Mr. Witham to obtain the services of a discovery vendor to facilitate production, the Court does note that further non-compliance may result in appropriate sanctions and that failure to take all necessary steps – such as engagement of a vendor - may be taken as circumstantial evidence of willful noncompliance.

### B. Mr. Witham's Financial Information

In his brief, Mr. Witham stated that he had provided the information regarding damages and his current employment since Hershey filed its motion to compel and

10

therefore, that portion of the motion was moot. (Pl.'s Mem. in Opp. 4, Dkt No. 98.) Upon the Court's questioning, Hershey's counsel agreed that "So long as plaintiff represents that he has produced all damages documents that he has and for whatever damages he's seeking in this case, then I think that portion is satisfied." (Jan. 23, 2025 Hr'g. Tr. 5:24–6:2, Dkt. No. 111.) Later, Mr. Witham's counsel represented that Mr. Witham had produced all documents responsive to the financial component of Hershey's motion. (*Id*. at 15:10–14.) Accordingly, the Court considers this issue settled and denies the motion as to Mr. Witham's financial information as moot.

## II.     Mr. Witham's Motion to Compel (Dkt. No. 86)

### A. Additional Comparator Requests for Accommodation

As the Court permitted in its September 2024 order, (Sept. 5, 2024 Order 16, Dkt. No. 67), Mr. Witham moves the Court to compel Hershey to produce the remaining "comparator requests" (*i.e.*, the accommodation requests made by other Hershey employees seeking to avoid vaccination under the mandate). (Pl.'s Mot. to Compel, Dkt. No. 86.) In September, the Court found these documents to be relevant to the subject matter of the case because "Hershey's evaluation of similar requests, *i.e.*, 'other incidents of the same type,' may explain the motive behind its denial of Mr. Witham's request." (Sept. 5, 2024 Order 16, Dkt. No. 67.) However, the Court limited the documents Hershey must produce to "the religious exemption request files for 25 employees who worked in a Hershey function most similar to Mr. Witham's." (*Id*.) The primary justification for that decision was a consideration of the privacy interests of those employees who made the requests, but the Court also believed that it was not proportional to require Hershey to

11

review each file and redact personally identifying information in each. In response to the Court's order, Hershey produced a total of 24 comparator request files. (A 25th comparator request file was produced but it was Mr. Witham's own file.)

Now, the privacy concerns that the Court held in September persist, but the burden on Hershey has largely evaporated because all of the comparator requests have been produced in a lawsuit in the Middle District of Pennsylvania (Pl.'s Mem. in Supp. 11–12, Dkt. No. 88.) In that case, Magistrate Judge Susan E. Schwab ordered that:

> The defendant [Hershey] shall produce the accommodation files (all information relating to the accommodation request and the decision on that request) for all the employees who requested a religious accommodation from the defendant's vaccine mandate. As plaintiff agreed at the conference, the defendant may produce such files with the names and identifying information redacted and as "Attorneys' Eyes Only Discovery Material" under the parties' Stipulation of Confidentiality and Protective Order.

*Stoffel v. The Hershey Company*, Civil No. 1:23-cv-01408 (M.D. Penn., Sept. 23, 2024) at Dkt. No. 27.

Magistrate Judge Schwab's order provides a model approach that addresses this Court's main concerns with ordering that all the comparator requests be produced: privacy and proportionality. By ordering that all these documents be produced in redacted form, the burden on Hershey in this case disappears because, pursuant to Magistrate Judge Schwab's Order, it has already done the work of identifying and redacting all religious accommodation requests. All that Hershey must do now is produce the same documents, in the same form, as were produced in *Stoffel* in compliance with that order. As to the Court's privacy concerns, the designation of the files as Attorneys' Eyes Only guards against the sensitive personal data in these files ending up in the wrong hands.

Accordingly, the Court adopts this approach and orders Hershey to produce all accommodation request files for Hershey employees who sought a religious accommodation or exemption from the COVID-19 vaccine mandate. The names of the filers and any personally identifying information in those documents will be redacted, and Hershey may designate the files as Attorneys' Eyes Only under the Protective Order in this case. For each accommodation request file, Hershey is not to redact the job title or name of the requesting employee's supervisor, and Hershey is to provide copies of the files it has already produced (updated if the files have changed since being produced in the Middle District of Pennsylvania) with these data points unredacted.

## B. Depositions of Hershey Personnel

Mr. Witham also seeks an order requiring Hershey to produce for depositions two Employee Relations employees, Kristie Celleri and Tory Niceswander. (Pl.'s Mem. in Supp. 16–17, Dkt. No. 88.) Ms. Celleri and Mr. Niceswander worked with LaQuita Gary in the Employee Relations department at Hershey. Ms. Gary is the Hershey employee who investigated and ultimately denied Mr. Witham's accommodation request. (*Id.*) Ms. Celleri and Mr. Niceswander, like Ms. Gary, evaluated religious accommodation requests from Hershey employees and helped develop the religious accommodation process, (*id.*) but Ms. Celleri and Mr. Niceswander did not evaluate Mr. Witham's request. (Def.'s Mem. in Opp. 14, Dkt. No. 101.) Mr. Witham has already deposed Ms. Gary, and may, depending on negotiations between counsel, have the opportunity to depose her again.[2]

---

[2] Here, the Court merely indicates that it is possible that Ms. Gary will be asked to testify again, as a potential Rule 30(b)(6) corporate representative. The Court makes no

13

Mr. Witham argues that because these two Employee Relations employees were involved in developing processes for evaluating accommodation requests and because they have information regarding "the bases for granting and denying requests, about the criteria used, and other subjects related to Plaintiff's claim and Defendant's defenses," their testimony is necessary to this case. (Pl.'s Mem. in Supp. 16, Dkt. No. 88.) Hershey claims that their testimony is irrelevant because "neither of these individuals had any involvement in Plaintiff's accommodation request." (Def.'s Mem. in Opp. 14, Dkt. No. 101.) It also argues that because Ms. Celleri and Mr. Niceswander's testimony would be duplicative of Ms. Gary's testimony, the burden of producing them for depositions outweighs any limited benefit to the case. (*Id.*) With the information that Mr. Witham has provided, the Court finds that the testimony of Ms. Celleri and Mr. Niceswander is likely to be unnecessarily duplicative of Ms. Gary's testimony and therefore, denies Mr. Witham's motion to the extent it seeks to compel their depositions.

Mr. Witham also seeks to depose Chris Scalia, Hershey's Chief Human Resources Officer. (Pl.'s Mem. in Supp. 17, Dkt. No. 88; Def.'s Mem. in Opp. 14, Dkt. No. 101.) He argues that the deposition of a person so high in Hershey's corporate structure is necessary to show that "higher ups were involved in the accommodation process and development." (Pl.'s Mem. in Supp. 17, Dkt. No. 88.) Hershey argues that a deposition of Mr. Scalia is barred by the Court's previous denial of Mr. Witham's motion to compel "Defendant's high-level employees' and decision makers' text messages, communications, emails, and

---

determination as to whether such a request is permissible, as no such motion is before it today.

14

social media postings and activity." (Def.'s Mem. in Opp. 14, Dkt. No. 101.) It points to the Court's determination that Mr. Witham's failure to accommodate claim "does not turn on the employer's intent or actual motive," (Sept. 5, 2024 Order 14, Dkt. No. 67), to argue that "discovery into leadership's motivation in developing or implementing the policy was irrelevant." (Def.'s Mem. in Opp. 15, Dkt. No. 101.) Because Mr. Witham provides very little legal or factual support for his claim that "higher ups were involved in the accommodation process and development," (Pl.'s Mem. in Supp. 17, Dkt. No. 88) and because Hershey's intent is not at issue in this case, the Court denies Mr. Witham's motion to compel a deposition of Mr. Scalia.

### C. Consistency and Sincerity Criteria

Mr. Witham seeks documents describing the criteria Defendant used to evaluate both the sincerity and the consistency of his religious beliefs. (*Id*. at 18.) He argues that, because Hershey claims that his beliefs were inconsistent and insincere, discovery into the process by which Hershey came to that determination and the criteria it set to do so is "of the utmost relevance." (*Id*.) While Mr. Witham claims that Hershey has refused to produce any such documents, Hershey says that "he has received all responsive documents." (Def.'s Mem. in Opp. 15, Dkt. No. 101.)

Both in its briefing and orally in open court, Hershey has said that no responsive documents remain unproduced. Notwithstanding these representations, Mr. Witham insists that responsive documents exist that Hershey refuses to identify and produce. He bases this insistence on the testimony of a former Hershey Human Resources employee that she assumed such criteria would be documented in some way, to ensure that the process was

15

consistent. (Pl.'s Mem. in Supp. 19, Dkt. No. 88.) Hershey argues that this employee was only tasked with determining Hershey's burden of granting a religious accommodation for the policy, and therefore, she had no direct knowledge of if or how those criteria had been documented. (Def.'s Mem. in Opp. 16, Dkt. No. 101.) Hershey substantively responded to an interrogatory seeking the same information but has consistently held that the documents Mr. Witham seeks do not exist. (*Id*. at 15; Decl. of Ali Kliment in Opp. ¶13 ("Hershey also conducted exhaustive ESI searches into Ms. Gary's emails and documents after preserving these emails and documents through a litigation hold and produced every non-privileged responsive document describing the "criteria" for evaluating religious accommodation requests.").)

To the extent that any responsive documents do exist and have not been produced, the Court grants Mr. Witham's motion to compel documents related to the criteria by which Hershey determined the consistency and sincerity of Mr. Witham's religious beliefs regarding the COVID-19 vaccines. Ultimately, the Court cannot order Hershey to produce documents which do not exist, and Hershey has said, in multiple filings with the Court, that it has produced all responsive documents that exist. As officers of the court and attorneys subject to Federal Rules of Civil Procedure 11 and 37, Hershey's attorneys have given the Court no reason to doubt their sincerity when they claim the documents Mr. Witham seeks simply do not exist.

### D. Undue Hardship Evidence

Mr. Witham states that Hershey has failed to produce "discovery regarding Defendant's 'costs of accommodating his religious beliefs, including actual costs Hershey

16

incurred in terminating him,'" as ordered by this Court in September. (Pl.'s Mem. in Supp. 6, Dkt. No. 88 (quoting Sept. 5, 2024 Order 14, Dkt. No. 67).) However, Mr. Witham provides no additional argument as to this aspect of his motion to compel and, in fact, his counsel intimated that this information may have been included in discovery provided after the motion was filed. (Jan. 23, 2025 Hr'g. Tr. 28:11–25.) Because Mr. Witham provided no additional discussion of this request, Hershey also did not provide briefing on the issue. The Court interprets this lack of discussion by both parties as an indication that this issue has been resolved and will deny without prejudice the motion to compel as to what Mr. Witham characterizes as "Costs and Undue Hardship Discovery."

## **ORDER**

Accordingly, based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant The Hershey Company's Motion to Compel (Dkt. No. 78) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order; and

2. Plaintiff Christopher Witham's Motion to Compel (Dkt. No. 86) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

Date: February 10, 2025

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge